*Court of Common Pleas, Dauphin County, January 16th,* 1860.

RESSLER, ADMINISTRATOR OF LESSMAN, *v.* WITMER.

A court of equity has the undoubted right to determine all disputed facts in a case within its jurisdiction, and need not direct an issue. When a person gave to another certain property to hold as trustee for his children, and after the death of the former, it was needed for the payment of his debts, this is such a case of fraud and trust as comes within equity jurisdiction; and it is not ousted because there might be some remedy at law. When property is given away in order to deprive the widow of her distributive share, that is a fraud cognizable in chancery. When the court is satisfied of the truth of a matter asserted in the bill and denied in the answer, it need not be proved by two witnesses.

BY THE COURT.—The bill in this case charges in substance that the decedent, Lessman, when on his deathbed, gave to the defendant a number of bonds, notes, etc., amounting to $1100, to hold in trust for himself and wife, and the other children and legal representatives of the decedent. That at the time and now the estate is largely indebted, much beyond the assets of the deceased, and the choses in action so intrusted to the defendant are required for the payment of his debts; that the defendant fraudulently denies the trust, and is about to collect the money due on the obligations, and convert the same to his own use. A decree for an injunction against collecting or disposing of the obligations is prayed for, and that they may be delivered over to the plaintiff, as administrator of the deceased, and brought into a regular course of distribution. To this bill the defendant put in a plea to the jurisdiction of the court, partly in the form of an answer denying the facts charged, and then contending that because the charges in the bill are so denied, an issue of fact is raised, which must be determined by a jury. It is probably the first time in the history of our jurisprudence that the power of a court of chancery to determine disputed facts has been denied.

[Ressler, Administrator of Lessman, v. Witmer.]

From the first organization of those courts, the practice has been uniform, to establish the allegations and denials contained in the bill and answer by the testimony of witnesses, taken either before the chancellor in person, master in chancery, or examiners appointed for the purpose; and it is only when great doubts arise in the mind of the chancellor, that an issue is directed. Not because either party asks, or has a right to ask it, but because the judge chooses to shift the responsibility of guessing from himself to a jury.    The counsel for the defendant has referred us to the Constitution of the United States, as securing the right of trial by jury.    It unquestionably does in "criminal cases" and in "suits at common law" in the courts of the United States; but the same Constitution fully recognizes the *equity* power of the courts; and from the passage of the first judiciary act under the Constitution, to the present day, the common law and equity practices have been kept distinct, and the line of demarkation, as established in England between the tribunals, has been most strictly observed.    During all of that time those courts, as well as nearly all of the State tribunals, have determined disputed facts when arising in equity, without the aid of a jury.    The chancellor, who has probably spent the most of a lifetime in unravelling intricate questions, and weighing the evidence in judicial controversies, is considered quite as competent to reach the truth in a disputed question of fact, as an inexperienced jury selected at random from the mass of the people.

The plea presented and subsequent exception, so far as they are both founded on the same general principle, are entitled to no weight whatever.  Does the bill set forth a case cognizable in equity in Pennsylvania?  We must look to that alone to determine the question of jurisdiction.    But two grounds are properly disclosed or averred in the bill, that the obligations demanded are held in *trust*, and that the defendant has been guilty of a *fraud* in refusing to account for them, and in claiming them as his own.    We have the powers of a court of chancery in " the case of trust money and property," and in all cases where chancery entertains jurisdiction under either of the heads of fraud, accident, mistake, and account, whether such fraud, accident, mistake, or account be actual or constructive.    There is another ground on which, from the facts disclosed, we might have well been asked to make a decree:  " The affording specific relief, when the recovery of damages would be an inadequate remedy;" but that is not averred in the bill, nor any decree asked by reason thereof.  The action of trover to recover promissory notes, with the chance of obtaining damages to their value and collecting the amount by an execution, we look upon as a very inadequate remedy for their unlawful detention.  There can be but little doubt of a trust, such as is disclosed and averred in this bill, coming within the jurisdiction of an English

chancellor. Our statute is remedial in its character, and should be liberally construed, so as to cover every case coming within the mischief intended to be remedied. The general case of "trust money and property" is given by the act; and Gibson, C. J., says, "that he will not say that this obscure clause might not be so construed, were it necessary to resort to it, as to shake off the imperfect remedy we were compelled to employ as a substitute for a bill in equity" (Lewis *v.* Lewis, 1 H. 82). The possibility of a remedy at law against a trustee will not prevent a court of chancery from taking jurisdiction, and a continuing trust can only be satisfactorily treated in equity (1 Jones, 393).

The bill also discloses a case of fraud; and courts of equity in this State have concurrent jurisdiction with courts of law in all cases of fraud, actual or constructive. It matters not whether the fraud be practiced in obtaining the property, or making the contract, or in attempting to pervert it to fraudulent purposes afterwards; whether it be practiced on the party from whom the articles were obtained upon his creditors, or those for whose use and benefit they were given or deposited. The courts will be equally astute in preventing one man from defrauding another by perverting a contract to a different purpose from that intended, as in overreaching him in obtaining it. It is averred that a man who was indebted at the time, gave his goods to his son-in-law in trust for his children, when they are required for the payment of his debts, and the administrator is proceeding for the use of creditors. No man who is largely indebted can give his goods away without value, or for a wholly inadequate consideration, when the effect is to deprive his creditors of their just debts. The trust in the present case is clearly asserted in the bill, and denied by the alleged trustee, who claims the articles as his own. If the allegations in the bill are true, and we must take them to be so in a question of jurisdiction, there is an attempt to defraud the *cestui qui trustent*, and the administrator sues as well on behalf of creditors, as to bring the avails into a course of distribution amongst the same parties for whom the defendant is trustee, after the debts are paid. Therefore, we cannot doubt the jurisdiction of a court of equity to investigate and prevent this alleged fraud and breach of trust.

It is contended that there is no evil complained of in this bill except such as could be remedied by a court of law, and therefore equity has no jurisdiction. Although every bill in chancery avers the want of *adequate* relief in a court of law, yet such averment is for the most part matter of mere form, as in very many cases both courts have concurrent jurisdiction. The extension of the remedy by actions at law to cases originally within the jurisdiction of equity, under our practice in this State, is no bar to equitable relief for the same cause (10 Barr, 273). The equitable jurisdic-

[Ressler, Administrator of Lessman, *v.* Witmer.]

tion given by the statute is valuable, and ought to be extended by every interpretation of which the words are susceptible (10 Barr, 274). And the acts should be liberally construed to extend the jurisdiction in furtherance of justice (1 H. 282). And to oust the jurisdiction of a court of equity, the party must not only have a remedy at law, but it must be *full, complete,* and *adequate* (Brightly, 203). The remedy at law must be as practical and efficient to the ends of justice and its prompt administration as that of equity (Parsons, 220). It is not sufficient that the suitor may have *some remedy* at law; it must be as complete and perfect as that reached by the more flexible machinery of a court of equity (1 Parsons, 541). It is sufficient that the equitable remedy is more convenient (1 Jones, 393). "It is perfectly clear," says Mr. Justice Washington, "that where a case is otherwise proper for the jurisdiction of a court of equity, it is no objection to its exercise that the party may have a remedy at law, although the act of Congress declares that suits in equity shall not be sustained, where a *plain, adequate,* and *complete* remedy may be had at law" (4 Wash. C. C. R. 205). It is sufficient that the remedy in equity is more complete and efficacious (Story's Eq. Pl. 473).

When once a court of equity can properly take cognizance of litigation, it will dispose of every subject embraced within the circle of the contest; for equity abhors a multiplicity of suits (2 Jones, 56, 63; 1 Story's Eq. Jur. s. 71, and note). Probably the only exception to that rule is, where a bill is filed for a discovery alone, and no facts are called forth or discovered by the answer. Even there it seems to be a mooted point. Where a discovery is obtained, the court will carry the proceedings through to prevent a multiplicity of actions (1 Story's Eq. Jur. ss. 65, 66, 67, 68, 71, 72, 73). When nothing is disclosed, it will probably be treated as a mere pretence (Ibid. s. 74, and note). Having established jurisdiction over the subject-matter of the bill, we must next examine into the facts and merits of the case. The evidence shows that Lessman and Witmer came together from Northumberland county into an adjoining township in this, with a view of establishing a flour store, and carrying on butchering, The former business was not started, and but little done at the latter. Witmer, the defendant, labored for some time in making additions to and repairing a house, in which both parties resided; the title of which appears to have been in a daughter of Lessman. During the time of their connection in business, which lasted about four months, Lessman expressed an anxiety that Witmer should be paid for his labor; and, as we understand the evidence, induced his single daughter, who held the title to the property, to transfer one undivided half of it to her sister, the wife of Witmer. In addition to this, Lessman, on August 31st, assigned to Witmer bonds and

notes to an amount exceeding $1100, ostensibly to pay him for his labor (already reasonably well compensated by an assignment of one-half of the property on which it was bestowed), but in reality, as we are well satisfied from the evidence, to keep the wife of Lessman from participating in any share of the property so transferred. This is of itself a fraud, which would furnish sufficient grounds for cancelling the contract, if it had been complained of in the bill. But it is not one of the grievances aver..d; therefore, we cannot notice it. The administrator could have properly complained of the act, as he recovers as a trustee for the widow, as well as the heirs at law and creditors. If property is transferred without consideration, for the purpose of defrauding the wife of her dower, such transfer is void as to her. She can even impeach a judgment confessed and sale of land thereon, when done for the purpose of depriving her of dower. It is stated in the bill, and not denied in the answer, that the estate of Lessman is considerably indebted, and that there are no personal assets to pay the debts. If this is true, and it is not denied in the answer, it furnishes good ground for cancelling the gift: for although there is some pretence that the notes were assigned in payment of a debt, yet the device is too shallow to bear the scrutiny of a court of equity for a moment. The labor given by the defendant, as well for himself as for Lessman, was worth something probably beyond what he received, but not to the amount of $1100. We are well satisfied that one hundred would have been ample remuneration. A man who is indebted at the time is neither permitted to give away his goods to the injury of his creditors, nor to pay a near relative in goods or money ten times the value of his labor, when such payment has that effect. The only difficulty in the way of a decree on that account alone is that it is nowhere averred that Lessman was seized of no sufficient *real estate* for the payment of his debts. It is true that had such been the case, when the indebtedness is stated in the bill, together with the want of personal assets, the defendant could very properly have replied that there was sufficient real estate for the purpose, and thus have taken the sting out of an important part of the charge. There being no suggestion in the bill, answer, or evidence, that Lessman died seized of any real estate, we are justified in taking it for granted that he possessed none at the time of his death, which occurred but a few days after the assignment of the notes in controversy. Notwithstanding the positive denial of the trust by the defendant in his answer, and the averment that he always claimed the choses in action as his own, we are well satisfied from the evidence that he originally received them under a promise and arrangement to collect the money when due, and divide it in equal portions among all the

children of Lessman, and the effort to hold them as his own and deny the trust is a fraud on the heirs of the plaintiff's intestate. The sole difficulty in the case arises from the rules of evidence in chancery, which require the oaths of two witnesses, or at least one and corroborating circumstances, to overcome the denial of the defendant in his answer. If this cause were trying in the form of an action of trover before a jury, there could be but little doubt of the result. If the testimony of Borel and Dockey can be added to that of Wm. Michael, the case is completely made out. Even leaving the evidence of these witnesses out of view, I am satisfied of the truth of the facts averred in the bill and of the falsehood of the answer from the corroborating circumstances. The doubt as to the competency of those witnesses (who were originally interested in right of their wives) arises from the limited wording of the releases, which only transfer the right, title, and claim of each of the parties and their respective wives, "in, to, or out of the personal estate of John Lessman, deceased." We have no evidence that Lessman died seized of any real estate, but the releases, from their wording, carry an implication to that effect; and although the present contest is concerning the personal effects, yet, if recovered, the amount goes in discharge of the debts, and in ease of the land, which would be otherwise liable. The interest of the witnesses being shown from their marriage relation, they must appear to have divested themselves entirely of that interest before their testimony can be received or weighed. As already stated, we think that there is sufficient evidence in this case without those two witnesses. Therefore, we are not required to pass upon their competency. The whole difficulty in the present case arises from the imperfection of the bill in not stating the interest of the widow of John Lessman and the intent to defraud her, the imperfect manner of wording those releases, and the want of an averment that Lessman had not sufficient real as well as personal estate to pay his debts. Yet, with all these imperfections, we have sufficient evidence to justify us in making a decree that the defendant be perpetually enjoined from collecting any part of the notes assigned to him, and that they be given over to the plaintiff, as administrator of Lessman, to be brought into a regular course of administration, and the avails thereof distributed according to law. In coming to this conclusion we have taken into consideration the distinction which exists between executed and executory contracts, that the court will often refuse to rescind the former, where it might decline to compel an execution of the latter; but there is no contract, however solemnly executed, but what will be rescinded by a court of equity for fraud, actual or constructive; and the one under which the defendant claims the property in the present case is rescinded

[Brown et ux. *v.* Ettla.]

because executed for a fraudulent object, and also because it has been endeavored to be perverted by the defendant to a fraudulent purpose.

*Casey* and *Brown, for plaintiff.*

*Shunk* and *Alricks, for defendant.*